**VIVITAR CORPORATION, Plaintiff,**

v.

**The UNITED STATES, et al.,
Defendants.**

**Court No. 84–1–00067.**

United States Court of International
Trade.

April 4, 1984.

---

See also, D.C., 585 F.Supp. 1415.

Stein, Shostak, Shostak & O'Hara, Washington, D.C. (Steven P. Kersner, Irwin P. Altschuler and Donald S. Stein, Washington, D.C.) for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., and Velta A. Melnbrencis, New York City, for defendants.

James C. Tuttle, Troy, Mich., for proposed intervenor.

Howrey & Simon, Washington, D.C. (Robert W. Steele, John F. Bruce, Roger C. Simmons, Kevin P. O'Rourke, Catherine M. Shea), Washington, D.C., for proposed intervenor.

Bass, Ullman & Lustigan, New York City (Robert Ullman, New York City), for amicus.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City (William F. Sondericker, New York City), for amicus.

*Opinion and Order*

RESTANI, Judge:

In this action, plaintiff, the owner of the Vivitar trademark, seeks a mandatory order directing the Customs Service to exclude from entry any merchandise bearing the Vivitar trademark that is imported without plaintiff's consent. Plaintiff contends in its complaint that 19 U.S.C. § 1526(a) and (b) (1982) and 15 U.S.C. § 1124 (1982) give it an unqualified right to demand such exclusion.[1]

Plaintiff licenses certain foreign subsidiaries to manufacture photographic equipment bearing the Vivitar trademark. These subsidiaries apparently are not licensed to market the goods they produce in the United States. Plaintiff asserts that various unrelated third parties are importing equipment bearing the Vivitar trademark that was manufactured by the foreign subsidiaries. Plaintiff contends that these importations are illegal, absent Vivitar's consent. It appears that the Customs Service does not prohibit these imports. The Customs Service interprets § 1526(a) and (b) to deny trademark owners the right to require the exclusion of trademarked goods manufactured abroad when the trademark owner has authorized the foreign manufacturer to apply the trademark to the goods. 19 C.F.R. § 133.21 (1983).[2]

---

**1.** 19 U.S.C. § 1526(a) and (b) read in relevant part:

[I]t shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label ... bears a trademark owned by a citizen of, or by a corporation ... created or organized within, the United States, and registered in the Patent and Trademark Office ... unless written consent of the owner of such trademark is produced at the time of making entry ... Any such merchandise imported into the United States in violation of the provisions of this section shall be subject to seizure and forfeiture for violation of the customs laws.

At oral argument, and in its reply brief, plaintiff essentially abandoned its claim under § 1124.

**2.** 19 C.F.R. § 133.21 reads in relevant part:

(b) *Identical trademark.* Foreign-made articles bearing a trademark identical with one owned and recorded by a citizen of the United States or a corporation or association created or organized within the United States are subject to seizure and forfeiture as prohibited importations.

(c) *Restrictions not applicable.* The restrictions set forth in paragraphs (a) and (b) of this section do not apply to imported articles when:

Plaintiff contends that the Customs Service's interpretation of § 1526(a) and (b) is contrary to law.

Defendants now move to dismiss the action for want of subject matter jurisdiction.

■ When jurisdiction is challenged, plaintiff has the burden of demonstrating that jurisdiction exists. *United States v. Biehl,* 3 CIT 158, 539 F.Supp. 1218 (1982).

■ At the threshold, plaintiff must establish that its cause of action arises out of a customs or international trade law. This court's jurisdiction is intended to reach only international trade disputes. H.R. Rep. No. 96–1235, 96th Cong., 2d Sess., 20 (1980), *reprinted in U.S.Code Cong. & Admin.News,* 3730 (1980) ("House Report").

■ Defendants' arguments against jurisdiction are based on the contentions that this case arises primarily out of the trademark laws, and jurisdiction over trademark cases must lie in the district courts rather than in the Court of International Trade. Both of these are unpersuasive. The contention that all cases related to trademarks must be heard in the district courts has been repeatedly rejected. *Manufacture De Machines Du Haut-Rhin v. Von Raab,* 6 CIT ——, 569 F.Supp. 877 (1983); *Manufacture De Machines Du Haute-Rhin v. International Armament Corporation,* Civil Action No. 82–1114–A (E.D.V.I.1983); *Lois Jeans & Jackets, U.S.A., Inc. v. United States,* 5 CIT ——, 566 F.Supp. 1523 (1983); *cf. Schaper Manufacturing Co. v. Regan,* 5 CIT ——, 566 F.Supp. 894 (1983) (case involving copyright issues).[3] The dis-

trict courts generally have jurisdiction over trademark cases. 28 U.S.C. § 1338 (1976). This court, however, has jurisdiction generally over cases arising out of international trade disputes. House Report at 34. This case and the cases cited above arise out of circumstances where an international trade dispute involves trademark issues.[4]

There is no simple formula for determining whether a given case is a trademark case or an international trade case. The *Schaper* case, however, offers a useful approach for analyzing whether such a case belongs in this court or the district courts. *Schaper* arose out of a dispute concerning a bond submitted by an American copyright holder during the pendency of a copyright infringement action against an importer in the district court. In *Schaper,* the court stated:

In determining whether a cause of action might be embraced by the jurisdictional grant bestowed upon this court by the Congress, *it is necessary that the gravamen of the complaint be determined.* Although the complaint in the instant action alleges jurisdictional support under 28 U.S.C. § 1581(i) and 17 U.S.C. §§ 602, 603 [relating to importation of merchandise infringing on copyrights], from the allegations contained in the complaint as well as from all the proceedings had before this court, it is manifest that *the thrust of the grievance alleged and the relief sought by the plaintiff relates to the regulations promulgated by customs and their admin-*

---

(1) Both the foreign and the U.S. trademark or trade name are owned by the same person or business entity;

(2) The foreign and domestic trademark or trade name owners are parent and subsidiary companies or are otherwise subject to common ownership or control (see §§ 133.2(d) and 133.12(d));

(3) The articles of foreign manufacture bear a recorded trademark or trade name applied under authorization of the U.S. owner.

**3.** In *Parfum Sterns, Inc. v. United States Customs Service,* 575 F.Supp. 416 (S.D.Fla.1983), the district court held that it had jurisdiction of

an action similar to the instant case. The court there did not discuss the jurisdiction of the Court of International Trade, and this court declines to follow that decision.

**4.** As the Ninth Circuit has noted in a different context, "Customs Court jurisdiction is not defeated because a statute or regulation serves other ends in addition to recognized customs purposes, so long as there exists 'a substantial relation to traditional customs purposes.'" *Cornet Stores v. Morton,* 632 F.2d 96, 99 (9th Cir. 1980), *citing Jerlian Watch Co. v. United States Department of Commerce,* 597 F.2d 687, 691 (9th Cir.1979).

*istration and enforcement* (emphasis added).

*Schaper,* 566 F.Supp. at 896.

In this case, the thrust of plaintiff's grievance is that Customs Service's administration and enforcement of § 1526(a) and (b) is improper. It allows importers to import goods bearing plaintiff's trademark.

Plaintiff is not alleging that these importers are infringing its trademark.[5] Trademark infringement is consistently defined in trademark law as the use of reproductions, copies, counterfeits or colorable imitations of genuine trademarks, 15 U.S.C. §§ 1114, 1118, 1124, 1127, *i.e.,* use of a trademark on goods not entitled to bear the trademark, or use of a mark deceptively similar to a registered trademark. Here, plaintiff concedes that the goods at issue properly bore the Vivitar trademark.[6] The central issue in this case is the regulation of international trade in goods bearing genuine trademarks, rather than trademark law.

The right to regulate the use of a trademark on genuine goods arises only in international trade transactions. No other use of a genuine trademark on goods entitled to bear the mark is restricted. The Customs Service's regulation of imports of genuine trademark goods is uniquely a concern of international trade law. This contrasts sharply with trademark infringement which is illegal in all forms of commerce.

It is sensible for this court to hear the present action because the dispute involves a statute and a Customs Service regulation in need of a uniform national interpretation. This court's basic purpose is to provide "a comprehensive system of judicial review of civil actions arising from import transactions, utilizing the specialized expertise of the [Court of International Trade] ... [to] ensure ... uniformity in the judicial decision-making process." House Report at 20, U.S.Code Cong. & Admin.News 1980, p. 3731. International trade law and Customs Service regulations must have a uniform national interpretation to provide a degree of certainty to those involved in complex international trade transactions. This court's exclusive jurisdiction over international trade litigation helps avoid conflicting interpretations of international trade law. All parties to this litigation recognize that international trade in genuine trademark goods is an important international economic issue. Conflicting interpretations of American law in this area would obviously create a great deal of unnecessary confusion and uncertainty.[7] Furthermore, Customs Service regulations governing international trade are particularly within this court's expertise.

Although the court finds that this is an international trade dispute, this fact standing alone does not conclusively establish that this action falls within the statutes governing the jurisdiction of this court. As defendant correctly notes, not all international trade disputes are within this court's jurisdiction. *United States v. Biehl,* 3 CIT 158 (1982).

Plaintiff, contending that this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (1982), advances two arguments.[8] First

---

**5.** For this reason *Montres Rolex, S.A. v. Snyder,* 718 F.2d 524 (2d Cir.1983); *Bally/Midway Mfg. Co. v. Regan,* 5 CIT ——, 565 F.Supp. 1045 (1983); and *Kidco, Inc. v. United States,* 4 CIT 103 (1982) are distinguishable. The gravamen of these actions was copyright or trademark infringement.

**6.** As noted above, plaintiff has abandoned all claims arising from trademark infringement under 15 U.S.C. § 1124.

**7.** Additionally, importers might seek to utilize one port over another if the law in one district was particularly favorable as to this or any other question of international trade law.

**8.** 28 U.S.C. § 1581(i) reads:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

plaintiff argues that this court would have jurisdiction under § 1581(a) to hear a protest of any exclusion of merchandise pursuant to § 1526(a) and (b). Therefore, plaintiff argues, this court has jurisdiction pursuant to § 1581(i)(4) to consider claims arising out of Customs Service regulations governing the administration and enforcement of exclusions pursuant to § 1526(a) and (b). Second, plaintiff argues that § 1526(a) and (b) is a law related to revenue from imports within the meaning of § 1581(i)(1), and therefore under § 1581(i)(4) this court has jurisdiction over any claim arising out of the administration and enforcement of § 1526(a) and (b). The court generally agrees with the first of plaintiff's arguments for the reasons stated below.[9]

Congress intended § 1581(i) as a plenary grant of residual jurisdiction to this court over international trade litigation. The House Report of the Customs Courts Act of 1980 makes clear the breadth of § 1581(i):

Under ... section 1581(i) ... the Court of International Trade has jurisdiction over those civil actions which arise out of a law of the United States pertaining to international trade.

House Report at 34, U.S.Code Cong. & Admin.News 1980, p. 3745. See Sacilor, Acieries et Laminoirs de Lorraine v. United States, 3 CIT 191, 542 F.Supp. 1020 (1982).

■ Section 1581(i) grants this court residual jurisdiction over suits against the United States arising out of the specific categories of laws described in § 1581(i)(1)–(3); and, in § 1581(i)(4), broad residual jurisdiction over "the administration and enforcement of the matters referred to in" § 1581(a)–(h), (i)(1)–(3). In the present case, this court has jurisdiction since plaintiff's claim arises out of administration and enforcement of the matters referred to in § 1581(a), and § 1581(i)(3).

Plaintiff here contests the Customs Service's decisions concerning exclusions under 19 U.S.C. § 1526(a) and (b). Normally an aggrieved party could contest Customs Service exclusion decisions under the customs laws only through filing a protest. United States v. Uniroyal, Inc., 69 CCPA ——, 687 F.2d 467 (1982). As this court has noted, the proper procedure to contest an exclusion under § 1526(a) and (b) is by filing a protest, then invoking this court's jurisdiction under § 1581(a) to contest the protest denial. Manufacture De Machines Du Haut-Rhin v. Von Raab, 569 F.Supp. 877.[10] However, here plaintiff is allegedly aggrieved by the Customs Service's *failure* to exclude merchandise from entry. 19 U.S.C. § 1514 makes it clear that a decision not to exclude merchandise is not protestable. Since protest procedures are not available, plaintiff can obtain relief in this court only if its claim is covered by the jurisdictional grant in § 1581(i).

Section 1581(i)(4) gives this court jurisdiction over claims arising out of administration and enforcement with respect to the matters referred to in § 1581(a).[11] The

---

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

9. The court does not accept plaintiff's argument that any law which results in the importation or exclusion of goods is a law relating to revenues from imports. Such a reading of § 1581(i)(1) would render much of the rest of § 1581(i) meaningless.

10. 19 U.S.C. § 1514(a)(4) permits an aggrieved party to protest "the exclusion of merchandise

from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws..."

11. 28 U.S.C. § 1581(a) reads:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

Section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515) sets out the procedures for administrative review of protests and indicates that 19 U.S.C. § 1514 defines the substantive law that serves as the basis for § 1581(a) protest jurisdiction. 19 U.S.C. § 1514 reads in relevant part:

matters encompassed by § 1581(a) are the matters set forth in 19 U.S.C. §§ 1514 and 1515. Thus, § 1581(i)(4) is a residual independent jurisdictional basis for litigating Customs Service administration and enforcement of the substantive matter that may be the subject of a protest, but where the protest remedy is inappropriate or unavailable. In this case plaintiff challenges the administration and enforcement of exclusions under the customs laws, *i.e.*, 19 U.S.C. § 1526(a) and (b).[12] But there has been no protestable exclusion under 19 U.S.C. § 1514(a)(4). Therefore, § 1581(i)(4) gives this court jurisdiction over plaintiff's claim.

■ The statutory scheme and the legislative history of § 1581(i) impose important limits on this broad jurisdictional grant. Section 1581(i) does not create new causes of action, it only defines the demarcation between the jurisdiction of this court and the district courts. House Report at 33. *See Carlingswitch, Inc. v. United States*, 5 CIT ——, 560 F.Supp. 46 (1983), *aff'd* 720 F.2d 656 (Fed.Cir.1983). And § 1581(i) cannot be used to evade the protest procedures in any case where a protest could be filed, except where the protest remedy is manifestly inadequate. *United States Cane Sugar Refiners' Association v. Block*, 69 CCPA ——, 683 F.2d 399 (1982).[13] Within these constraints, a broad application of § 1581(i)(4) is essential to ensure that this court remains the forum for adjudicating all disputes arising out of the laws of international trade, as Congress intended.

The legislative history makes clear that Congress intended § 1581(i)(4) to give this

court broad residual jurisdiction over cases arising out of the administration and enforcement of the substantive international trade law that is also the subject matter of the more specific jurisdictional provisions in section 1581. In discussing § 1581(i)(4)'s relationship to the antidumping and countervailing duty statutes, the House Report states:

> [S]ubsection (i), and in particular paragraph (4), makes clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long · as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.

House Report at 48, U.S.Code Cong. & Admin.News 1980, p. 3760. As this court has noted:

> [u]nless these preceding jurisdictional subsections [1581(a)–(h) ] express or contain in their manifest legislative history, a limitation on jurisdiction of other related actions, they do not operate to diminish the broad grant of jurisdiction contained in section 1581(i).

*Sacilor,* 3 CIT at 193, 542 F.Supp. 1020. In *Sacilor,* the court held that § 1581(i) conferred upon this court jurisdiction over a case arising out of an antidumping investigation. The court held that the antidumping laws are within this court's plenary jurisdiction over international trade law, and the case was not reviewable through normal procedures for administrative and judicial review of antidumping cases. *See also Ceramica Regiomontana S.A. v.*

---

[D]ecisions of the appropriate customs officer ... as to

   *    *    *    *    *    *

(4) The exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title

   *    *    *    *    *    *

shall be final and conclusive ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest is commenced in the United States Court of International Trade...

**12.** 19 U.S.C. § 1526(a) and (b) expressly state that an importation outlawed by these sections is a "violation of the *customs laws.*" (Emphasis added).

**13.** Neither of these constraints limit plaintiff's action here. Prior to 1980, a cause of action of this type would have been within the district court's general federal question jurisdiction. 28 U.S.C. § 1331. And, as noted above, plaintiff in this action cannot obtain a protestable decision under 19 U.S.C. § 1514(a).

*United States*, 6 CIT ——, 557 F.Supp. 596 (1983).

A more narrow reading of § 1581(i)(4) would essentially render it meaningless when applied to § 1581(a). If § 1581(i)(4), as it relates to § 1581(a), were limited to cases arising from the administration and enforcement of protests then the jurisdictional grant in § 1581(i)(4) would duplicate the jurisdictional grant in § 1581(a). Cases arising from the filing, review, and denial of protests under 19 U.S.C. §§ 1514 and 1515 have to be brought pursuant to § 1581(a). *See United States v. Uniroyal*, 687 F.2d 467. Section 1581(i) was not meant to be so limited. As Judge Nies noted in *Uniroyal*, "the broad subject matter jurisdiction of the court under § 1581(i) may be invoked only when no other remedy is available or the other remedies provided under other provisions of 28 U.S.C. § 1581 are manifestly inadequate." *Id.* at 475 (concurring opinion). There are no remedies available in this court to plaintiff except those provided by § 1581(i).

■ This court also has jurisdiction over plaintiff's cause of action since 19 U.S.C. § 1526(a) and (b) involves administration and enforcement of "other quantitative restrictions" within the purview of 28 U.S.C. § 1581(i)(3).

Section 1581(i)(3) on its face indicates that the term quantitative restrictions is meant to cover a number of import restrictions. The term embraces embargoes since the section expressly refers to embargoes and other quantitative restrictions. This court's decisions have also indicated that quotas generally are quantitative restrictions. *United States Cane Sugar Refiners' Association v. Block*, 3 CIT 196, 544 F.Supp. 883 (1982), *aff'd* 69 CCPA ——, 683 F.2d 399 (1982); *Sanho Collections, Ltd. v. Chasen*, 1 CIT 6, 505 F.Supp. 204 (1980). Finally, the subsection makes clear that statutes outlawing the importation of certain goods are within the ambit of § 1581(i)(3) as long as the ban is not for reasons of public health and safety.

In effect, § 1581(i)(3) gives this court jurisdiction over cases arising under the customs laws where the importation of goods is limited to a specific quantity. This includes a statutory limit of zero in the case of embargoes and statutes outlawing the importation of certain merchandise. Section 1526(a) provides just such a statutory limit: it outlaws the importation of all trademarked goods under certain circumstances.

Congress' intent to include actions arising out of customs laws outlawing certain imports within this court's § 1581(i)(3) jurisdiction is evident from the express language of the statute and the legislative history. This court has jurisdiction over actions arising out of laws imposing "quantitative restrictions on the importation of merchandise for reasons other than public health and safety." 28 U.S.C. § 1581(i)(3). The legislative history clearly indicates that Congress used the limiting language to exclude from this court's jurisdiction suits arising under the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* (1982), and the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 *et seq.* (1982). Both of these statutes contain provisions totally outlawing importation of certain unhealthy and dangerous goods, 15 U.S.C. § 2612, 21 U.S.C. § 381 (1982). Congress intended that the district courts, which have jurisdiction over all other cases arising under these laws, should also have jurisdiction over cases involving imported goods arising under these laws to prevent different standards from evolving for imported and domestic goods. House Report at 47–48.[14] The House Report states that Congress explicitly adopted the limiting language of § 1581(i)(3) "in an effort to remove any confusion over the jurisdiction of the Court of International Trade regarding this or similar issues." House Report at 47–48,

---

**14.** As discussed above, CIT jurisdiction over § 1526(a) and (b) disputes does not present this

problem.

**1427**

U.S.Code Cong. & Admin.News 1980, p. 3759.

Therefore, since Congress needed to explicitly exclude from this court's jurisdiction statutes outlawing certain imports, Congress obviously intended § 1581(i)(3) to give this court jurisdiction generally over statutes prohibiting importation of merchandise. Any other reading of § 1581(i)(3) would render the limiting language of § 1581(i)(3) ineffectual. An interpretation of a statute that causes any part of it to be meaningless is strongly disfavored, "every effort [must be] made to give full force and effect to all the language contained therein." *Dart Export Corp. v. United States,* 43 CCPA 64, 74 (1956), *cert. denied* 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956).

Also Congress' intent to give this court jurisdiction over laws outlawing importation can be inferred through basic principles of statutory construction. Since, in § 1581(i)(3), Congress expressly eliminated one type of statute outlawing imports, by inference Congress intended other statutes barring imports to be included within § 1581(i)(3). Such a construction arises from the principle of *expressio unius est exclusio alterius. United States v. Douglas Aircraft Co.,* 62 CCPA 53, 510 F.2d 1387 (1975). This principle is only an aid to construction and will not be applied to defeat Congressional intent. *Di Jub Leasing Corp. v. United States,* 1 CIT 42, 505 F.Supp. 1113 (1980). But, unlike *Di Jub,* applying this principle is consistent with Congress' overriding intent that the jurisdictional grant in § 1581(i) be read broadly to ensure that this court has jurisdiction over causes of action arising out of the laws of international trade. *Id.* at 47, 505 F.Supp. 1113.[15]

■ Therefore, for the reasons stated above, plaintiff's cause of action arising out of 19 U.S.C. § 1526(a) and (b) is a dispute arising out of the laws of international trade, and this court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(3) and (4). Defendant's motion to dismiss is denied as to plaintiff's claim under 19 U.S.C. § 1526(a) and (b). The motion to dismiss is granted as to plaintiff's claim under 15 U.S.C. § 1124.[16]

---

**15.** In *Di Jub,* applying the principle would have improperly restricted this court's jurisdiction over international trade cases.

**16.** Ordinarily this court would consider transferring plaintiff's dismissed claim to the appropriate district court. 28 U.S.C. § 1631. However, plaintiff's oral argument and reply brief make clear that its claim is not substantially based on 15 U.S.C. § 1124. Therefore, transfer would be pointless and not in the interests of justice.